IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DESMOND CORDELL WOODSON,
    Petitioner,

v.                                                                     Civil No. 3:19cv899 (DJN)

HAROLD CLARKE,
    Respondent.

## MEMORANDUM OPINION

Petitioner Desmond Cordell Woodson, a Virginia state prisoner proceeding *pro se*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," (ECF No. 1)), challenging his convictions in the Circuit Court of Prince William County, Virginia ("Circuit Court") for second-degree murder and use of a firearm during the commission of murder. Petitioner argues that the following grounds entitle him to relief:[1]

| | |
|---|---|
| Claim One | Trial counsel was ineffective for failing to "challenge the prosecutorial misconduct committed by the Commonwealth's Attorney, who coerced, coached and used false witness testimony against him in order to prosecute him for crimes he did not commit." (ECF No. 1, at 16.) |
| Claim Two | "Trial counsel was ineffective for failing to . . . move to suppress his alleged confession gleaned from documents of song lyrics seized from his jail cell . . . ." (*Id.*) |
| Claim Three | "Trial counsel was ineffective for failing to advise and misrepresenting the facts, evidence, and law, as counsel directed and coached him how to change his plea to guilty, thereby causing [him] to involuntarily and unknowingly plead guilty to crimes he did not commit." (*Id.*) |

---

[1]     The Court employs the pagination assigned by the CM/ECF docketing system for citations to parties' submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from the Petitioner's submissions.

    In his § 2254 Petition, Petitioner seeks relief on his State Habeas Claims Two, Three, and Four. (ECF No. 1, at 23.) Accordingly, in setting forth his federal claims for habeas relief, the Court quotes from the Petitioner's recitation of his State Habeas Claims. (*Id.* at 10.)

Respondent concedes that Petitioner has properly exhausted his claims by presenting them to the Supreme Court of Virginia on state habeas. (ECF No. 15, at 5.) Respondent contends that Petitioner's claims lack merit. Petitioner has filed a Reply. (ECF No. 24.) For the reasons set forth below, the Court will dismiss Petitioner's claims, because they lack merit.

### I. SUMMARY OF THE EVIDENCE

Petitioner was originally indicted on the charges of "murder of Jose Tomas Velasquez, in violation of Virginia Code Section 18.2–32, committed for the benefit of, at direction of, or in association with any criminal street gang, to-wit: Bloods, in violation of Virginia Code Section 18.2–46.2" (ECF No. 15-2, at 1); and use of firearm in the commission of a felony for the benefit of or in association with a criminal street gang in violation of Virginia Code Section 18.2–46.2 (*id.* at 2), and the second-degree murder of Velasquez (*id.* at 4). Petitioner eventually agreed to plead guilty to second-degree murder and use of a firearm during the commission of a murder in exchange for the Commonwealth's agreement to drop the gang-related charges and recommend a sentence within the sentencing guidelines.[2] (ECF No. 17-2, at 41, 64.; ECF No. 15-1, at 7.) During Petitioner's guilty plea hearing, the Commonwealth summarized the evidence of Petitioner's as guilt as set forth below.

In the early morning of November 25, 2016, Jose Tomas Velasquez suffered two fatal gunshot wounds to his abdomen while on Byrd Drive in the City of Manassas, Virginia.[3] (ECF No. 17-2, at 51–53.) At the murder scene, police recovered two spent shell casings for .380

---

[2] Second-degree murder "is punishable by confinement in a state correctional facility for not less than five nor more than forty years." Va. Code Ann. § 18.2–32 (West 2021). Both the gang-related offenses were Class 5 felonies punishable by "a term of not less than one year nor more than 10 years." Va. Code Ann. 18.2–10(e). Accordingly, if convicted after a trial, Petitioner faced a sentence between six and sixty years. The conviction for use of a firearm during the commission of a murder required a mandatory minimum consecutive sentence of three years. Va. Code Ann. § 18.2–53.1 (West 2021).

[3] November 24, 2016 was Thanksgiving Day.

2

caliber firearm. (*Id.* at 53–54.) Multiple witnesses saw two young black men running from the scene and getting into a white sports car. (*Id.* at 55.) Video surveillance footage captured the car leaving the area of the murder. (*Id.*)

On November 30, 2016, Manassas City Police learned that a similar vehicle had been involved in a hit and run crash in Culpeper, Virginia. (*Id.*) The car was registered to Bobby Thomas, who was in the custody of the Culpeper Police Department. (*Id.* at 56.) During an interview, Thomas eventually confessed that he had picked up Petitioner and Daiquan Thompson on Thanksgiving night. (*Id.*) These three men went to the area where Velasquez was killed to buy marijuana. (*Id.*) Thomas stayed in the car while Thompson and Petitioner walked away to buy the marijuana. (*Id.* at 55–56.) After a few minutes, Thomas heard two gun shots and then Petitioner and Thompson ran up to the vehicle and jumped in. (*Id.* at 57.) Petitioner and Thompson briefly discussed the shooting and passed a handgun back and forth. (*Id.*) All three men then drove to a Sheetz convenience store[4] and later Thomas dropped Petitioner and Thompson off at a home in Manassas Park. (*Id.*)

After Petitioner and Thompson were arrested, another inmate at their place of detention brought a discarded letter, written from Petitioner to Thompson, to the authorities. (*Id.*) In that letter, Petitioner "makes statements that are tantamount to a confession to the shooting." (*Id.* at 57–58.) Specifically, Petitioner acknowledges that Thompson must feel distress for being "charged with something [he] didn't do." (*Id.* at 58.) Petitioner further acknowledges that the police only think Thompson is the shooter, because Thomas committed perjury at the preliminary hearing. (*Id.*) Petitioner then concludes: "P.S. little do you know in a second-degree murder it doesn't matter who's the shooter. You're going to get the same time as me because you were right there with me." (*Id.*)

---

[4] Video footage from the Sheetz store confirmed this portion of Thomas's account. (ECF No. 17–2, at 57.)

3

Thereafter, the authorities conducted a search of Thompson's and Petitioner's cells at the Prince William County Adult Detention Center. (*Id.* at 59.) They recovered from Petitioner's cell a paper on which he wrote rap lyrics wherein he bragged about committing a homicide on Byrd Drive with a .380 caliber handgun. (*Id.*)

Eventually, Petitioner's codefendant, Thompson, contacted the prosecutor and agreed to explain what happened on the evening of the murder. (*Id.* at 60.) Thompson relayed that he had stolen the firearm used in the murder. (*Id.*) On the evening of the murder, Thompson gave the gun to Petitioner, because Thompson believed that he might encounter the individual from whom Thompson had stolen the gun. (*Id.*) Thomas, Thompson, and Petitioner then drove to an area near Byrd Drive to buy marijuana. (*Id.*) Thompson and Petitioner got out of Thomas's car, and began to walk down Byrd Drive when they encountered Velasquez, the murder victim. (*Id.*) Velasquez began to act aggressively towards Petitioner. (*Id.*) Petitioner pulled out the .380 handgun and shot Velasquez twice in the abdomen. (*Id.* at 60–61.)

Petitioner and Thompson ran to Thomas's car, got in, and fled the scene. (*Id.* at 61.) In the ensuing car ride, Thompson told Petitioner that he did not think Petitioner had killed Velasquez because the shots had hit Velasquez's abdomen. (*Id.*) Petitioner expressed that he was confident that he had killed Velasquez, because he had used hollow point bullets in the gun. (*Id.*) Thompson stated that they then went to the Sheetz convenience store and eventually to a home in Manassas Park, where Petitioner departed with the firearm. (*Id.*)

At his sentencing, Petitioner acknowledged that he shot and killed Velasquez and apologized to the victim's family. (*Id.* at 107–08.) The Circuit Court ultimately sentenced Petitioner to forty years of imprisonment with twenty-two suspended on the murder charge, and three years of imprisonment (the mandatory minimum) on the firearm charge, for an active term of imprisonment of twenty-one years. (*Id.* at 110.)

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel provided him with deficient representation and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the Court can readily dismiss the claim for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). An assertion by Petitioner that he would not have pled guilty if he had received better assistance from counsel does not dispose of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any

5

findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

### A. Claim One

In Claim One, Petitioner faults counsel for not challenging alleged prosecutorial misconduct at the preliminary hearing with respect to Bobby Thomas. Specifically,

> Petitioner asserts that during the hearing, the prosecutor coached Thomas and caused him to change his testimony mid-way through the hearing. Thomas had originally, testified he picked up [Petitioner] and a co-defendant [Thompson] after the shooting, but neither party discussed the shooting. The prosecutor then requested a recess, after which Thomas implicated the co-defendant in the shooting by testifying [Thompson] mentioned the shooting after getting in the car. Petitioner contends that trial counsel should have objected to the recess because the prosecutor coached [Petitioner] to change his testimony and trial counsel should have moved to dismiss the charges against the petitioner when Thomas failed to implicate petitioner in his testimony.

(ECF No. 1, at 17–18.)

At the preliminary hearing, Thomas initially denied that Petitioner and Thompson had engaged in any discussion after the shooting upon entering Thomas's car. (ECF No. 17–2, at 150.) The prosecutor then asked Thomas if he had previously spoken to the police in this case to which he replied, "No." (*Id.*) At this point, the prosecutor asked for a brief recess. (*Id.*) Petitioner's counsel and Thompson's counsel conferred off the record and then declined to object. (*Id.* at 151.) When the matter recessed, the record reflects that Thomas conferred with his counsel, rather than the prosecutor. (*Id.*) When the hearing resumed, Thomas altered his testimony and acknowledged that Petitioner and Thompson discussed the shooting after it had occurred. (*Id.* at 152.) However, at this point, Thomas said Thompson admitted to shooting the victim. (*Id.*)

6

Under these circumstances, counsel reasonably refrained from objecting to the continuance or Thomas's change of testimony. First, given Thomas's inaccurate statement that he had not talked to the police about the shooting, it was fairly plain that he was not providing accurate testimony. Second, no evidence suggests that the prosecutor coerced Thomas to modify his testimony. Rather, Thomas spoke with his own counsel, who apparently reminded Thomas of the peril he might face if he testified falsely. Finally, counsel for Petitioner was happy to let Thomas's post-recess testimony stand as it implicated Thompson, rather than Petitioner, as the shooter. Given these circumstances, Petitioner fails to demonstrate that counsel acted deficiently.

Additionally, Petitioner fails to demonstrate any reasonable probability that an objection by his counsel would have resulted in a different result for the preliminary hearing, much less his conviction and sentence. Because Petitioner fails to demonstrate deficiency or prejudice, Claim One will be DISMISSED.

### B. Claim Two

In Claim Two, Petitioner faults counsel for failing to move to suppress the seizure of the paper containing inculpatory rap lyrics from Petitioner's cell.[5] Prior to searching Petitioner's cell, the prosecution obtained a search warrant for the cell. (Cir. Ct. R. 8–9). Counsel for Petitioner moved to quash the search warrant and suppress all of the items seized from Petitioner's cell on the grounds that, *inter alia*,: (1) "there is no representation or delineation of any underlying factual basis of probable cause that there existed anything in the possession of Desmond Woodson for the granting of the Search Warrant," and (2) the seized items contained discovery material provided to Petitioner for his criminal case that counsel had encouraged him

---

[5] For documents pertaining to Claim Two, the Court cites to the state court record in *Commonwealth v. Woodson,* No. CR17001624–00 ("Cir. Ct. R.") and employs the pagination assigned to the record by the Clerk of the Circuit.

to writes notes on and therefore this material constituted attorney/client privileged communications. (*Id.* at 5–6.) During the hearing on the Motion to Suppress, defense counsel explained that he did not have the affidavit in support of the Search Warrant when he originally filed the Motion to Suppress.[6] (*Id.* at 213.) The defense conceded that the prosecution could search Petitioner's cell, and only contested the seizure of items related to discovery material and notes Petitioner may have made in preparation for trial. (*Id.* 211–13.)

Petitioner has not advanced any viable basis upon which counsel could have moved to suppress the paper containing the inculpatory song lyrics. Because Petitioner fails to demonstrate deficiency or prejudice, Claim Two will be DISMISSED.

### C. Claim Three

In Claim Three, Petitioner contends that counsel provided deficient advice in advising him to plead guilty.

> Petitioner contends rap lyrics seized from his jail cell did not confirm his participation in the shooting, but trial counsel informed him the lyrics amounted to a "full confession" to the shooting. Petitioner argues trial counsel did not correctly advise him as to the relevant law because counsel did not inform petitioner of the distinction between an admission and a confession. Petitioner could have argued at trial that the rap lyrics constituted only admissions and did not amount to a

---

[6] The affidavit provided the following probable cause for searching Petitioner's cell.

> On May 24, 2017, your Affiant came into possession of an in-house jail letter where the incident is discussed. Upon further investigation, your Affiant learned from a confidential informant that the letter was sent by co-defendant Desmond Woodson to co-defendant Daiquan Thompson. During the investigation, your Affiant learned from a Confidential Informant that the letter was initially in the possession of Mr. Thompson. The Confidential Informant advised that Mr. Thompson discarded the letter at which point the Confidential Informant got possession of the letter. The Confidential Informant further advised your Affiant that he/she knows Mr. Thompson has at least two additional letters where the incident is discussed. During the investigation, the Confidential Informant provided your Affiant the letter. Your Affiant seeks to obtain the additional letter and additional writing samples to send to the Forensic Laboratory to compare them with the letter obtained. The investigation is in reference to the murder that occurred on 11/25/16 on Byrd Drive in the City of Manassas.

(Cir. Ct. R. 14.)

> confession and, therefore, he could have refuted the Commonwealth's assertions if he had testified at trial. If he had known he could testify and argue the lyrics [did not constitute a confession], then he would not have pled guilty. Petitioner further alleges trial counsel "coached" him on how [to] enter a guilty plea.

(ECF No. 1, at 18.)

As recounted above, the Commonwealth had compelling physical and testimonial evidence reflecting Petitioner's guilt. Both Thompson and Thomas placed Petitioner at the murder scene. The police had recovered Petitioner's discarded letter to Thompson wherein Petitioner essentially acknowledged that he shot the victim. Thereafter, Petitioner penned his rap lyrics wherein he bragged about shooting someone on the same street with the same sort of gun used to kill the victim.

Counsel did not act unreasonably in advising Petitioner that, under these circumstances, his song lyrics amounted to a confession and that he should plead guilty. Petitioner's convictions on the murder and firearm charges were a near certainty. Such convictions exposed Petitioner to a sentence of between eight and forty-three years. Nevertheless, by pleading guilty to the above charges, Petitioner eliminated his sentencing exposure of an additional twenty years on the gang-related charges and obtained an agreement from the prosecution to recommend a sentence within the sentencing guideline range of thirteen years and one month to twenty-one years and eleven months. (Cir. Ct. R. 119.) Given the near certainty of his conviction on the murder and firearm charges and the sentencing benefit Petitioner received, Petitioner fails to demonstrate that counsel acted deficiently or that he was prejudiced by counsel's advice. Accordingly, Claim Three will be DISMISSED.

### III. CONCLUSION

The Motion to Dismiss (ECF No. 13) will be GRANTED. Petitioner's claims and the action will be DISMISSED. The § 2254 Petition (ECF No. 1) will be DENIED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Petitioner fails to meet this standard. Accordingly, a certificate of appealability will be DENIED.

Let the Clerk file a copy of this Memorandum Opinion electronically and send a copy to Petitioner.

An appropriate Order shall issue.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 9, 2021